Avert, J.,
dissenting. That it is against public policy to stifle a criminal prosecution, is a settled doctrine of the common law. A note, bond or agreement, intended to effect such a purpose, .being founded upon an illegal consideration, is, therefore, held to be void. Courts of justice will not lend themselves to carry into execution any such agreement — and holding both parties who consent to engage in it to be guilty, will not allow themselves to interfere in behalf of either, nor to give countenance in any shape to such a transaction.
This wholesome doctrine has been recognized as the law of Ohio, in all the various forms in which the question has been heretofore presented to the court. In the 4th Ohio Rep. 400, Roll v. Raguet, the principle is distinctly asserted, “ a court of justice leaves the parties as it finds them; if the agreement be executed, the court will not rescind it; if executory, the court will not aid in its execution.” I do not believe there would be wisdom in the attempt to overturn, or in any way ■depart from that principle.
*563 The complainant sets forth in his bill, besides other matters therein stated, that in 1837 he sold a tract of land to Isaac C. Robe for $525, payable in four annual installments. He gave to Robe an article of agreement, and took his four promissory notes for the purchase money. Robe, in the course of a year or somewhat more, assigned all his interest in the article to Roberts, the defendant, for $25; and Roberts afterwards, for the consideration of $25, delivered up the article to the complainant, to be canceled. On the 25th of July, 1840, Roberts obtained, with complainant’s consent, the possession of the article, for the purpose of using it as evidence in a suit he had pending in the common pleas of Trumbull county. Roberts afterwards, on the 9th of June, 1841, in company with Freeman and Goodrich Deming, called on the complainant, at his residence in Portage county, and accused him of the crime of perjury, in a certain deposition by him given before one Luther L. Brown, Esq., to be used in evidence in the aforesaid cause pending in Trumbull county. Roberts stated that he had two substantial witnesses by wrhom he could prove the perjury; that he was then on his way to Ravenna to commence a criminal prosecution for said crime, and unless complainant would forthwith give him his notes for the sum of 150 dollars and a mortgage to secure payment of them, he would straightway prosecute him for the crime of perjury. The complainant protested he was innocent, and asked for permission to consult with his neighbors and with his wife, but was refused, and he was then and there induced to execute to Roberts his three promissory notes for $50 each, and a mortgage to secure their payment. The prayer of the bill is for a decree, that the notes and mortgage be delivered up to the complainant, and for such other relief as may be according to equity.
This bill of the complainant, it will be observed, distinctly asserts, that the notes and mortgage were given to stifle a prosecution for perjury. It does not hint at any other real or pretended consideration, as existing in the case.
*564 Roberts, in his answer, which is under oath, denies the greater part of the allegations in the bill. He asserts th^t the com plainant called upon him, and proposed to take back the land contract, and pay him $75 — to which proposition he acceded, and thereupon gave up the contract; that complainant paid him $25, and not being able, at the time, to pay the remaining $50, delivered to defendant the notes he held against Robe. He says further, that the complainant did not give up the notes against Robe to be canceled, but he gave them up on account of the $50 — the balance which he owed the defendant— telling him that he should not give up the notes to Robe, but should sue and collect them.
The deposition of the complainant, in giving which, it is alleged he committed perjury, was taken before Luther S. Brown, Esq., on the 9th of March, 1841, to be used in a cause in the common pleas of Trumbull county, between James Jenard, plaintiff, and Isaac C. Robe, defendant. It states the contract for the sale of the land, and sets out the four negotiable promissory notes, payable one, two, three and four years after date. It further states, that the deponent purchased the article from Roberts, for which he paid him $25, and gave him up the notes for the land; that he supposed the notes were all settled; for Roberts said that Robe had told him to take up the notes and keep them, as deponent supposed, for Robe. To the inquiry, whether he ever disposed of the notes, the deponent’s answer is, that he never did to any person, but delivered them up to Roberts to keep for Robe.
The deposition further asserts, that Roberts came to deponent, stating that he was about to be sued for the notes, and he wanted the article; that deponent asked Roberts if he had kept the notes in his possession, and he gave no satisfactory answer: and that, to the question, “ What did Roberts agree to give you, at the time he got the article ?” deponent’s answer was, “ He said I should have half of what he could collect on the notes.”
*565 Now, there were present at the time of the transaction — that is, the sale of the article by Roberts to the complainant — three witnesses, who all support Roberts in the statement of the contract, as given in his answer, and contradict the complainant’s testimony concerning the sale — that the consideration was $25, and that the notes were not disposed of, but were delivered up to Roberts for Robe. Here is no inconsiderable array of witnesses, to establish the charge of falsehood against the complainant.
Opposed to them are two witnesses, Susannah Robe and. Seth Oviatt, neither of them present at the transaction, who testify to declarations of Roberts concerning the contract, which are regarded as inconsistent with the testimony of the three, and which are supposed to show that the contract between Roberts and the complainant was for $25, and no more, and that the notes were merely given up by the complainant for the use of Robe.
So much testimony to the falsehood of some' of the statements in the deposition, needs to be met by rather strong testimony and circumstances, before all belief in it can be destroyed, and before relief can be granted in equity, against the direct denials, under oath, in the answer. The improbability that two such men as these parties have shown themselves to be, should attempt a speculation of the kind, is not, to my mind, strong enough for the purpose. To me it seems not incredible, that both Roberts and complainant should have supposed it possible, and have actually thought of trying to make something out of these negotiable notes in their possession, and that, without scrupulously consulting either the rights or the interest of Robe. Especially may this be believed, if any reliance can be placed upon that part of the complainant’s deposition which represents the agreement spoken of, when Roberts last got possession of the article — that complainant “ should have half of what could be collected on Robe’s notes.”
Concerning the alarm and fear of the complainant, when ac cused of the criminal offense, there may be room for conjee *566 ture upon the evidence, that it was conscience that madé a coward of him, in the case.
The statement of the complainant, that he was not allowed to consult his friends or his wife, cannot be entitled to very great consideration; because he was left by Roberts and the others, with his family, after the threat, and he had time for reflection and consultation, before he started to meet Roberts, and complete the arrangement at the office of the magistrate.
But whatever may be determined as to the guilt of the complainant, whether the whole evidence taken together be sufficient or not, to establish the charge of falsehood, there is reason for believing that Roberts, upon the evidence within his reach, had the intention, which he averred, of prosecuting the complainant ; certainly, there is no absurdity in supposing that such was his real intention. And the actual guilt or innocence of the complainant, is not a question properly arising in the case, as I had supposed; it is the character of the contract — was it really made and intended for the suppression of a criminal prosecution ? In the case before referred to, in 4 Ohio Rep. 400, which has established the rule in this state, the plea as there given, contains no averment that the party executing the instrument, was either guilty or innocent, but only that he was “ suspected and accused.” A plea, therefore, is good without such averment.
I was not able to concur in opinion with the other two members of the court who sat in the cause. I think the complainant showed no cause for relief, and that his bill ought to be dismissed.